IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Steve A. Frempong, et al.,** <br> *Plaintiffs,* <br><br> v. <br><br> **Sheriff of Philadelphia, et al.,** <br> *Defendant* | Case No. 24-cv-01064 |

**MEMORANDUM RE: MOTION TO DISMISS**

**Baylson, J.**                                                                                                                **August 1, 2024**

Plaintiffs Steve A. Frempong and Agnes Frempong have sued the Sheriff of Philadelphia for violating 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), and 1986 as well as several state law claims. The Sheriff of Philadelphia seeks dismissal under Rule 12(b)(6). For the following reasons, the Sheriff of Philadelphia's motion is **GRANTED without prejudice and with an opportunity for Plaintiffs to amend within fourteen (14) days.**

**I.      Alleged Facts**

Plaintiffs' pro se Amended Complaint is, at times, difficult to parse. The below allegations are this Court's best effort to summarize the allegations in the favorable light required at this initial stage.

Plaintiff Steven Frempong owned and lived at 7500 North 21st Street in Philadelphia with Plaintiff Agnes Frempong. Am. Compl. ¶¶ 9, 12, ECF 7. In 2015, the City of Philadelphia sought to reclaim the land and sell it at auction. Id. ¶ 9. Then, in 2017, Defendant G.V. Homes purchased the 7500 North 21st Street property and initiated an ejectment action in state court. Id. ¶ 10.

1

Frempong contests the validity of the sale and ejectment, but that matter does not serve as the basis for his current Complaint.[1] Id. ¶¶ 10–11.

In September 2021, Plaintiffs were evicted from the North 21st Street home. On September 9, 2021, Deputy Sheriff Paris Davenport ("Davenport"), Anthony Morone ("Morone"), a representative of G.V. Homes and President of C. and N. Property Service, a moving company, and several G.V. Homes employees visited the 7500 North 21st Street property to take possession of the home. Am. Compl. ¶¶ 12–14. Davenport and Morone told Plaintiffs that Morone's company, C. and N. Property Service, would pack and move all of Plaintiffs' personal belongings from the 21st Street property to Plaintiffs' new residence, which was approximately ten blocks away, at no charge and on the same day. Id. ¶¶ 14–15, 38.b–d. In consideration for C. and N. and G.V. Homes

---

[1] As matters of public record, several Pennsylvania state court decisions outline the lengthy procedural history of the property dispute. This Court takes judicial notice of them at the pleadings stage. In re Rockefeller Ctr. Props. Sec. Litig., 194 F.3d 280, 292–93 (3d Cir. 1999). The Pennsylvania Superior Court summarized:

> [T]he Frempongs were the owners of property located in the city and county of Philadelphia. The Frempongs failed to pay real estate taxes for the property for several years. [ ] In 2015, the City of Philadelphia filed a petition for rule to show cause why the property should not be sold free and clear from all liens, and in March 2016, the trial court authorized a real estate tax lien sale on the property. G.V. Homes purchased the property through the tax lien sale on December 19, 2017.
>
> The Frempongs refused to vacate the property or permit G.V. Homes to enter the property, and ultimately, G.V. Homes filed a complaint in ejectment and trespass on August 5, 2019. Additional litigation ensued.
>
> The trial court conducted a bench trial on March 17, 2021, after which the trial court found in favor of G.V. Homes and awarded G.V. Homes possession of the property. The Frempongs subsequently filed a motion for post-trial relief requesting that the court dismiss the ejectment action, set aside the verdict, or conduct a new trial; the trial court denied the motion. Additionally, upon praecipe of G.V. Homes, the trial court issued a writ of possession.

G.V. Homes, Inc. v. Frempong, 304 A.3d 771 (Pa. Super. Ct. 2023), reargument denied (Nov. 20, 2023). The Superior Court denied immediate stay of the eviction in July 2021, G.V. Homes, Inc. v. Frempong, 2022 WL 2165557 at *1 (Pa. Super. Jun. 16, 2022), and later rejected Plaintiffs' appeal on the merits. Frempong, 304 A.3d at 771.

moving Plaintiffs' possessions to their new home, Plaintiffs allowed G.V. Homes to have full entry and possession of the 21st Street property before they were legally entitled to do so based on the ejectment action. Id. ¶ 38.b. In other words: Plaintiffs expedited their eviction in exchange for the transportation of their possessions, as assured to Plaintiffs by Davenport and Morone. Id. ¶¶ 36–38.

Plaintiffs' inventory included household goods (furniture, equipment, clothing, entertainment, beds, TVs, kitchen, dining room, study tables), and a pickup truck. Id. ¶ 38.a. Morone estimated that it would take five trips to complete delivery of these items. Id. ¶ 44. On September 9th and 10th, Morone completed two of these delivery trips; however, multiple items sustained damage in the process. Id. ¶¶ 19, 44. In the next delivery, Morone brought the wrong property to the Plaintiffs —i.e., the items delivered belonged to another household. Id. ¶¶ 21, 47. Plaintiffs contacted Morone, the Sheriff's Office, and G.V. Homes to address this error after it had occurred, and Plaintiffs did so again on or around October 8th to complain of Morone's continued failure to deliver Plaintiffs' property. Id. ¶¶ 22–23. Despite promises to do so, Morone neither retrieved the items that had been erroneously delivered to Plaintiffs' new residence, nor completed the promised deliveries of Plaintiffs' own possessions. Id. ¶¶ 21–23. When Plaintiff called Davenport to alert him to the issues, Davenport said "it wasn't right for the G.V. Homes and Mr. Morone [sic] to two the truck illegally to New Jersey" and recommended Plaintiffs seek court intervention. Id. ¶¶ 23–24.

Over two and a half-years later, G.V. Homes and Morone have still failed to deliver half of Plaintiffs' belongings, including furniture and the truck, which Plaintiffs believe is in New Jersey. Id. ¶ 49–50. Plaintiffs' approximate the fair market value of the undelivered items is over $50,000. Id. ¶ 51.

## II. Procedural History

On November 2, 2023, Plaintiffs initiated this lawsuit in the Philadelphia Court of Common Pleas, which Defendants removed to federal court on March 12, 2024. ECF 1. Plaintiffs filed an Amended Complaint on May 8, 2024. ECF 7. The Amended Complaint joins the following parties as Defendants: Deputy Sheriff Paris Davenport in his individual and official capacity; the Sheriff and the Office of the Sheriff of Philadelphia; G.V. Homes, Inc.; Gregory Granovsky, the owner of G.V. Homes; the President/CEO and Vice President/COO of G.V. Homes; Anthony Morone, the CEO/President/Owner of C. & N. Property Services; and Jane and John Does of Moving Services of Pennsylvania. In total, Plaintiffs bring twenty-one claims against these Defendants, sixteen state law claims and five federal law causes of action.

The federal claims are as follows: 42 U.S.C. § 1981, claiming discrimination on the basis of race against all Defendants; §1982, claiming racial discrimination with regard to property rights against all Defendants; §1983, claiming deprivation of Plaintiffs' constitutional rights against Defendants Sheriff and Davenport; §1985, claiming conspiracy to interfere with civil rights against all Defendants; and §1986, claiming neglect to prevent interference with civil rights against all Defendants. For the §1983 claim, Plaintiffs specifically allege deprivation of their Fourteenth Amendment due process protections for deprivation of property and their Fourteenth Amendment right to Equal Protection under the laws.

On May 13, 2024, Defendants Davenport and the City of Philadelphia filed a 12(b)(6) Motion to Dismiss. Defs. Mot. to Dismiss, ECF 8. Plaintiffs filed their Response on May 30, 2024. Pls. Resp., ECF 10.

### A. The Sheriff of Philadelphia's Contentions

In its Motion to Dismiss, the Sheriff of Philadelphia offers two arguments for dismissal.

4

First, the Sheriff contends that the expiration of the statute of limitations bars Plaintiffs' Conversion (Count X), 42 U.S.C. § 1982 (Count XIV), 42 U.S.C. § 1983 (Count XV), 42 U.S.C. § 1985 (Count XVI), 42 U.S.C. § 1986 (Count XVII), and Pennsylvania Civil Rights Conspiracy (Count XVIII) claims. Def. Mot. to Dismiss 4. For the federal claims, the Sheriff argues that a two-year statute of limitations bars the §1983 and §1985 claims, and a one-year statute of limitations bars the claim brought under §1986. Id. at 5. The Sheriff notes that the deprivation of Plaintiffs' property occurred on September 9, 2021, which began the tolling of the limitations period. Id. at 4. As such, the date of Plaintiffs' initial filing means that both the one and two-year statute of limitations listed for all claims had expired before said filing. Id.

The Sheriff further argues that, regardless of the statute of limitations, Plaintiffs' claims against the Sheriff are devoid of sufficient factual allegations. Id. at 6. The Sheriff rejects Plaintiffs' attempts to sue the Sheriff under a respondeat superior theory of tort liability and asserts that, as a municipal entity, it can only be sued by way of municipal liability. Id. Such liability requires that the Sheriff have an alleged deficient custom or policy in place related to Plaintiffs' claims. Id. As no such customs or policies were alleged by Plaintiffs, the Sheriff argues that Plaintiffs' claims against it fail, and the Sheriff must be dismissed from this action. Id. at 6.

B. **Plaintiffs' Response**

In their Response to the Sheriff's Motion, Plaintiffs agree with the Sheriff as to the respective statute of limitations for each of Plaintiffs' claims. Pls. Resp. 14. However, Plaintiffs argue that these statutes of limitations had not yet expired at the time that Plaintiffs filed their initial Complaint. Id. at 15.

Plaintiffs reject the accrual date of September 9, 2021, arguing that this was merely the date on which the contract between parties was initiated—not a date on which injury was incurred

and the statute of limitations thus triggered. Id. at 15. Rather, Plaintiffs offer two potential accrual dates for the claims brought against the Sheriff: November 20, 2021, the date on which Plaintiffs allege they learned that Morone had lied to them about storing their truck in his warehouse, and May 15, 2023, the date on which Plaintiffs alleged they learned that possessions had been left by the Defendants at their new property without their consent. Id. at 9.

### III.    Jurisdiction

The district court has original jurisdiction over Plaintiffs' federal claims. 28 U.S.C. § 1331. Because federal question jurisdiction exits, the court may choose to exercise supplemental jurisdiction over Plaintiffs' remaining claims. 28 U.S.C. § 1367.

### IV.    Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). To survive the motion, a plaintiff must "plead 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). At the same time, the Third Circuit favors substance over form—"a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (internal citations and quotations omitted).

**V.     Discussion**

For the purposes of the Motion to Dismiss here, this Court need only consider the Sheriff's argument that Plaintiffs' claims are not cognizable against the Sheriff as the employer of Deputy Sheriff Davenport if Plaintiffs have otherwise pled a prima facie case of liability against Davenport. However, as discussed below, Plaintiffs' federal claims against the Sheriff must be dismissed because Plaintiffs have not pled sufficient factual allegations to subject Davenport to §§ 1981, 1982, 1983, 1985, and 1986 liability. Moreover, Plaintiffs' fail to plead §§ 1981, 1982, 1985, and 1986 against any Defendants.

**A.     Plaintiffs' §§ 1981, 1982, 1985, and 1986 Claims Are Not Supported by Well-Pled Allegations**

While the elements of 42 U.S.C. §§ 1981, 1982, 1985, and 1986 are distinct, they share a common, essential threat—all require a defendant acted with racial animus. Because the Amended Complaint is devoid of well-plead allegations that race motivated any of the Defendants' actions, these Counts must be dismissed.[2]

Section 1981 protects the rights of all citizens to make and enforce contracts free from racial discrimination. 42 U.S.C. § 1981; St. Francis Coll. v. Al-Khazraji, 481 U.S. 604, 609 (1987) ("Although § 1981 does not itself use the word 'race,' the Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts."). A plaintiff must

---

[2] While the exception not the rule, sua sponte dismissals are allowed after the complaint has been served. Oatess v. Sobolevitch, 914 F.2d 428, 430 (3d Cir. 1990). When "it is clear that the plaintiff cannot prevail and that any amendment would be futile," a court may dismiss a cause of action. Bethea v. Nation of Islam, 248 F. App'x 331, 333 (3d Cir. 2007). Here, Plaintiffs have already amended their Complaint once and substantively responded to the City of Philadelphia's Motion to Dismiss. At no time have they offered any well-pled allegations of racial animus motivating any Defendants, making it "crystal clear" that their allegations, "taken in the light most favorable to [the Frempongs], are patently meritless and beyond all hope of redemption." Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002). Although the non-municipal Defendants have not briefed the issue, Plaintiffs have had multiple opportunities to supplement their claims through the Amended Complaint and responsive pleading. Thus, this Court is assured that "[t]his is the rare case where," after fully appraising the facts, the decision to dismiss is "exercised with caution" and "an informed one." Goodwin v. Castille, 465 F. App'x 157, 163 (3d Cir. 2012).

7

show "(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." Estate of Olivia ex rel. McHugh v. New Jersey, 604 F.3d 788, 797 (3d Cir. 2010).

Section 1982 ensures that all citizens have "the same right to inherit, purchase, lease, sell, hold, and convey real and personal property" as that which is "enjoyed by white citizens." 42 U.S.C. § 1982. At the pleadings stage, a plaintiff suing under § 1982 "must allege with specificity facts sufficient to show or raise a plausible inference of (1) the defendant's racial animus; (2) intentional discrimination; and (3) that the defendant deprived plaintiff of his rights because of race." Brown v. Philip Morris, 250 F.3d 789, 797 (3d Cir. 2001).

Section 1985(3) prohibits racially motivated conspiracies to deprive plaintiffs of lawfully guaranteed rights or privileges. 42 U.S.C. § 1985(3). Again, a plaintiff must "allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious," Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006).

Here, the §§ 1981, 1982, and 1985(3) claims must be dismissed because Plaintiffs have failed to plead any facts of invidious racial motivation. The only portions of the Amended Complaint containing any reference to racial discrimination are recitations of the §§ 1981, 1982, and 1985(3) causes of actions. Definitionally, these are conclusory statements, not factual allegations. They amount to threadbare recitals of the elements of the causes of action and must be dismissed.

Plaintiffs' § 1986 claim against Davenport and the Sheriff must likewise be dismissed. Claims brought under § 1986 must be premised upon a valid § 1985 claim. Clark v. Clabaugh, 20

8

F.3d 1290, 1295 (3d Cir. 1994). So, dismissal of Plaintiffs' § 1985(3) claim requires dismissal of the § 1986 claim as well.

### B. Plaintiffs' § 1983 Claims Must Also be Dismissed

Plaintiffs advance two theories of liability for their § 1983 claim. First, they claim the municipal Defendants discriminated against them because of their race in violation of the Equal Protection Clause in the Fourteenth Amendment. Am. Compl. ¶¶ 126-135. And second, Plaintiffs argue that the Sheriff's Department, through Davenport, violated their Fourteenth Amendment due process rights in depriving them of their property. Id. ¶¶ 136-144.

Briefly, an Equal Protection claim for racial discrimination requires a plaintiff to prove that an individual, acting under the color of state law, intentionally discriminated against the plaintiff because of his race. Kimber-Anderson v. City of Newark, 502 F. App'x. 210, 214 (3d Cir. 2012). For the reasons discussed, supra, regarding the §§ 1981, 1982, 1985(3), and 1986 claims, Plaintiffs' § 1983 theory of racial discrimination is not viable.

#### 1. Plaintiffs fail to state a § 1983 claim because the deprivation of their property was not caused by state action

Plaintiffs contend that Davenport violated their due process rights when Morone breached his contract with Plaintiffs and deprived them of their property. At essence, then, Plaintiffs recolor their state law breach of contract and conversion claims as § 1983 due process violations.

The question presented is whether the breach of contract and subsequent conversion of Plaintiffs' property was the product of any state action. That inquiry reduces to two queries: was Morone a state actor when he failed to perform his contract and/or did Davenport participate in the deprivation of Plaintiffs' property?

The Supreme Court admonishes that "[c]areful adherence" to § 1983's state action requirement "preserves an area of individual freedom by limiting the reach of federal law and

9

federal judicial power." Lugar v. Edmonson Oil Co., 457 U.S. 922, 936 (1982). In that vein, a "private party is not converted into a state actor as long as the assistance of the state official remains merely a potential threat," rather than executed force. Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 278 (3d Cir. 1999) (internal citations and quotations omitted).

      a. *Morone as not a state actor when he failed to perform his contract*

In a § 1983 claim, the constitutional deprivation must be the product of "state action or under the color of law." Jordan v. Fox, Rothschild, O'Brien, & Frankel, 20 F.3d 1250, 1264 (3d Cir. 1994). When a nominally private actor causes the constitutional violation, they are still subject to § 1983 liability when the (1) deprivation was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) the private actor "may be fairly said to be a state actor." Lugar, 457 U.S. at 937. The Third Circuit has clarified that the second prong means the state "significantly contribute[d] to the deprivation, e.g., authoriz[ed] its own officers to invoke the force of law in aid of the private persons' request." Jordan, 20 F.3d at 1266.

Morone and G.V. Homes's contractual breach fails the state actor test at both stages. First, Morone did not use any state proceeding, law, or authorized procedure when he allegedly deprived Plaintiffs of their property. Critically, the deprivation was not the formation of the agreement, but Morone's subsequent failure to perform and withholding of Plaintiffs' possessions. Here, there was no "state procedural rule" or "state statute" that Morone relied upon to justify its breach. Jordan, 20 F.3d at 1265. Rather, the rank conversion of Plaintiffs' property was seemingly without any state-created justification, unlike the seminal illustrations Lugar highlights where a defendant utilizes a "state statute" or other state procedure to effectuate a constitutional violation. Lugar, 457 U.S. at 937. Moreover, when the complained of conduct is "contrary to the relevant policy

10

articulated to the State," as here, the action "could in no way be attributed to a state rule or a state decision." Id. at 940.

But even had Morone satisfied the first part of the state actor test, it does not meet the second. The Third Circuit has described the state assistance prong as meaning the state "authoriz[ed] its own officers to invoke the force of law in aid of the private persons' request." Jordan, 20 F.3d at 1266. Thus, the state must actually assist in the violation. Once again, Plaintiffs' fail to plead that Davenport supported, encouraged, or assisted Morone in breaching the contract. While Plaintiffs allege Davenport assisted in helping the parties agree to the arrangement, that action is not the alleged infirmity—Morone's breach is the root of Plaintiffs' claim.

Threadbare allegations that Davenport conspired with Morone to breach the contract do not constitute well-pled facts. See Cruz v. Donnelly, 727 F.2d 79, 81 (3d Cir. 1984) (holding that Plaintiff failed as a matter of law to implicate state action when only evidence of conspiracy between police and private actors was that police followed the private actors' reasonable request to search Plaintiff's person). Indeed, the Supreme Court and the Third Circuit are clear that "a plaintiff must assert facts from which a conspiratorial agreement can be inferred" Great W. Mining & Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010), and that a "bare assertion of conspiracy will not suffice." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Rather, Plaintiffs needed to plead facts that showed Davenport "somehow reached an understanding to deny the plaintiff[s] of [their] rights." Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 295 (3d Cir. 2018) (internal citations and quotations omitted). Sufficient circumstantial evidence could include "that the alleged conspirators did or said something to create and understanding, the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy." Id. (internal citations and quotations omitted). The

Amended Complaint contains neither direct nor circumstantial evidence that Davenport was party to Morone's breach, beyond speculating to some nefarious plot.

In fact, according to Plaintiffs, after he realized Morone was breaching the agreement, Davenport encouraged Plaintiffs to initiate court action against Morone. Thus, not only did Davenport not assist Morone's breach, but he advised Plaintiffs on remedial action against him.

### b. Davenport did not participate in the breach

Actions of Davenport are properly attributable to the state under § 1983. See Lugar, 457 U.S. at 937 (holding that state action is obvious when "the claim of a constitutional deprivation is directed against a party whose official character is such as to lend the weight of the State to his decision"). In the "context of private repossessions," the "test is whether the officer maintains neutrality or take an active role in the repossession resulting in an unconstitutional deprivation." Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 609–10 (3d Cir. 2011). The "mere presence of police" does not constitute state action, however, an officer "abandons neutrality once he takes an active role and assists in the repossession." Id. at 610. Aid "may take the form of facilitation, encouragement, direction, compulsion, or other affirmative assistance in repossession." Id. In other words, liability will "only attach where an office has played a 'principal role' in the seizure." Brown v. City of Philadelphia, 2012 WL 1758172, at *5 (E.D. Pa. May 16, 2012) (Caracappa, M.J.) (quoting Abbott v. Latshaw, 164 F.3d 141, 147 (3d Cir. 1998)). To guide this analysis, the Third Circuit adopts a seven-factor inquiry, including whether the officer:

> (1) accompanied the private party onto the scene,
> (2) told the debtor that the seizure was legal,
> (3) ordered the debtor to stop interfering or he would go to jail,
> (4) intervened at more than one step in the repossession process,
> (5) failed to depart before the repossession has been completed,
> (6) stood in close proximity to the creditor, or
> (7) unreasonably recognized the documentation of one party over the other.

Harvey, 635 F.3d at 610.

Plaintiffs' claims are most analogous to the repossession line of cases, where disposition turns on whether the state actively assisted with the loss of property. Once again, Plaintiffs fail to allege Davenport assisted, encouraged, facilitated, compulsed or provided any affirmative aid to Morone in breaching their contract. It bears repeating that the formation of the contract, which Davenport allegedly assisted, is not the violation—post-hoc breach is the heart of the claim. In that, Davenport did not (1) accompany Morone, (2) tell Plaintiffs the seizure was legal, (3) order Plaintiffs to acquiesce or risk remand to custody, (4) intervene to help Morone, (5) stand in close proximity with Morone, or (6) recognize Morone had a right to the possession. Harvey, 635 F.3d at 610. As such, Plaintiffs fail to tie the state, through Davenport, to Morone's action.

## VI. Conclusion

For the foregoing reasons, the Sheriff of Philadelphia's Motion to Dismiss is **GRANTED without prejudice and with an opportunity for Plaintiff to amend**. An appropriate **ORDER** will follow.