IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| STEVE A. FREMPONG and AGNES FREMPONG, *Plaintiffs,* <br><br> v. <br><br> THE SHERIFF OF PHILADELPHIA and G.V. HOMES INC., *Defendants.* | CIVIL ACTION <br> NO. 24-1064 |
|---|---|

**Baylson, J.**                                                                                         **October 29, 2024**

### MEMORANDUM RE: MOTION TO DISMISS

Plaintiffs Steve A. Frempong and Agnes Frempong filed a Second Amended Complaint pro se suing the Sheriff of Philadelphia and G.B. Homes, Inc. ("Defendants") for violation of, inter alia, 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), and 1986. Plaintiffs allege that Defendants illegally and unconstitutionally deprived Plaintiffs of their property as motivated by race and nationality-based animus. Second Am. Compl. ¶ 13, ECF 16. Plaintiffs' Second Amended Complaint presents identical federal causes of action to their First Amended Complaint. While Plaintiffs have provided further detail to their allegations, Plaintiffs' allegations—even construed liberally due to Plaintiffs' pro se nature—still fail to state any federal claim on which relief can be granted. For the following reasons, the Sheriff of Philadelphia's Rule 12(b)(6) motion to dismiss the Second Amended Complaint, ECF 17, is **GRANTED with prejudice**.

I.   FACTUAL ALLEGATIONS

As this Court noted regarding Plaintiffs' First Amended Complaint, ECF 12, Plaintiffs' Second Amended Complaint is also, at times, difficult to parse. Again, this Court has used its best effort to summarize Plaintiffs' allegations in the favorable light required at this stage and has construed Plaintiffs' pleadings liberally. See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021).

1

Plaintiff Steven Frempong, a Black man from Ghana, owned and lived at 7500 North 21st Street in Philadelphia with Plaintiff Agnes Frempong, a Black woman from Ghana. Second Am. Compl. ¶¶ 9, 12, ECF 16.  In 2015, the City of Philadelphia sought to reclaim the North 21st Street property based on unpaid taxes.  Id. ¶ 10.  In 2017, Defendant G.V. Homes purchased the North 21st Street property at auction and initiated an ejectment action against Plaintiffs.[1]  Id. ¶ 11.

Plaintiffs were evicted from the North 21st Street property.  Prior to Plaintiffs' eviction date, Mr. Frempong asked Mr. Paris Davenport, Deputy Sheriff of Civil Enforcement the Office of the Sherriff of Philadelphia, if the government could postpone the eviction temporarily.  Id.  Mr. Davenport did not respond.  Id.  So, Plaintiffs proceeded with preparing to vacate the property.

On September 8, 2021, Plaintiffs rented a van to move out of the North 21st Street property. Id. ¶ 17.  On September 9, 2021, Mr. Davenport arrived at the North 21st Street property with the Sheriff of Philadelphia's (the "Sheriff") moving agents, Anthony Morone (owner of C and N Property Services ("C&N")) and Gregory Granovski (owner of G.V. Homes).  Id. ¶ 18.  Plaintiffs then notified Mr. Davenport that Plaintiffs needed more time to pack their belongings.  Id. ¶¶ 19–20.  Mr. Davenport offered to pack and move Plaintiffs' items through C&N and G.V. Homes, and had brought personnel to do so.  Id. ¶ 20.  Mr. Frempong agreed and provided Mr. Davenport, C&N, and G.V. Homes with Plaintiffs' new address on Chew Avenue to which the items could be delivered ("the Agreement").  Id.  Mr. Morone promised to video and take pictures of any property left behind at the North 21st Street property to send to Plaintiffs.  Id.

---

[1] Several Pennsylvania state court decisions outline the lengthy procedural history of the property dispute. This Court takes judicial notice of them at the pleadings stage.  See In re Rockefeller Ctr. Props. Sec. Litig., 194 F.3d 280, 292–93 (3d Cir. 1999); G.V. Homes, Inc. v. Frempong, 304 A.3d 771 (Pa. Super. Ct. 2023), reargument denied (Nov. 20, 2023).

In consideration for C&N and G.V. Homes moving Plaintiffs' possessions to their new property, Plaintiffs led C&N and G.V. Homes around the house to show them what needed to be packed, and then Plaintiffs left the property. Id. ¶¶ 22, 27. The Agreement to allow C&N and G.V. Homes to pack and move Plaintiffs' property was pretext to lure Plaintiffs into accepting the offer by Mr. Davenport to have C&N and C.V. Homes pack and move Plaintiffs' property so that Defendants could seize Plaintiffs' property.[2] Id. ¶¶ 40, 41(b).

Over the next week, C&N and G.V. Homes delivered to Plaintiffs only one-quarter of their possessions.[3] Id. ¶ 23. Additionally, of the few items which were delivered, several items were damaged. Id. ¶ 24. Notably, while the Chew Avenue property was purchased in fee simple by Mr. Frempong, the deed for the property was later forged and an individual named Kealonda Roberts obtained fraudulent title to the property. Id. ¶ 27–28. At the time Defendants were supposed to deliver Plaintiffs' property to the Chew Avenue property, Ms. Roberts held fraudulent title to the property. Id. ¶ 30. The title was not in Mr. Frempong's name. Id.

Plaintiffs repeatedly complained that they had not received all their property and that most of the property they had received was damaged. Id. ¶ 25. On October 8, 2021, Mr. Frempong contacted Mr. Davenport and Mr. Morone about these issues. Id. Mr. Morone promised to deliver a truck filled with Plaintiffs' property that was in his warehouse. Id. However, Mr. Morone did not do so. On or around November 20, 2021, Mr. Frempong learned that the truck containing Plaintiffs' property was in New Jersey and that Mr. Morone had lied when he told Mr. Frempong that the truck was at his warehouse. Id. On or around November 21, 2021, Mr. Frempong learned

---

[2] As discussed further infra, most of Plaintiffs' property was subsequently disposed of rather than delivered. Second Am. Compl. ¶ 26, ECF 16.
[3] Undelivered items included bedroom sets, an air conditioning unit, and various pieces of equipment, all of which remain undelivered and were presumably disposed of. Id. ¶¶ 23, 26.

that Plaintiffs' undelivered property was disposed of. Id. ¶ 26. Ms. Roberts, then living at Chew Avenue based on fraudulent title to the property, also discovered that clothing that belonged to Plaintiffs had been delivered intentionally to the back lot of the property between October and December 2022. Id. ¶¶ 31–32.

## II.  PROCEDURAL HISTORY

On November 2, 2023, Plaintiffs initiated this lawsuit in the Philadelphia Court of Common Pleas. ECF 1. Defendants removed the case to federal court on March 12, 2024. Id. Plaintiffs filed a First Amended Complaint on May 8, 2024. ECF 7. The Sheriff moved to dismiss the First Amended Complaint, ECF 8, and the Court granted dismissal with leave to amend on August 1, 2024, ECF 11. On August 22, 2024, Plaintiffs filed a Second Amended Complaint which includes largely the same allegations and causes of action as the First Amended Complaint. Second Am. Compl., ECF 16.

Plaintiff's Second Amended Complaint brings the following federal causes of action, which were also included in the First Amended Complaint: 42 U.S.C. § 1981 (Count XIII) and 42 U.S.C. § 1982 (Count XIV), claiming discrimination on the basis of race; 42 U.S.C. § 1983, claiming deprivation of property in violation of Plaintiffs' constitutional rights (Count XV); 42 U.S.C. § 1985(3), claiming conspiracy to interfere with civil rights (Count XVI); and 42 U.S.C. §1986, claiming neglect to prevent interference with civil rights (Count XVII).[4] On September

---

[4] Plaintiffs' Second Amended Complaint also brings the following state law claims: breach of contract (Count I); breach of implied contract (Count II); unjust enrichment (Count III), tortious interference with contractual relationship (Count IV); fraud (Count V); inducing breach of contract or refusal to deal (Count VI); negligent misrepresentation (Count VII); intentional fraudulent misrepresentation (Count VIII); misappropriation (Count IX); conversion (Count X), aiding and abetting fraud (Count XI), breach of fiduciary duty (Count XII); civil conspiracy (Count XVIII); and punitive damages (Counts XIX, XX, and XXI).

11, 2024, the Sheriff moved to dismiss Plaintiffs' Second Amended Complaint.  ECF 17.  This Court has original jurisdiction over Plaintiffs' federal claims.  28 U.S.C. § 1331.

### III. STANDARD OF REVIEW

In considering a 12(b)(6) motion to dismiss, this Court must accept all factual allegations as true and view them in the light most favorable to the plaintiff.  Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020).  To survive a motion to dismiss, a plaintiff must plead facts that, accepted as true, "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011).  A complaint is insufficient if it suggests the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (citing Twombly, 550 U.S. at 555).

As Plaintiffs are proceeding pro se, the Court construes their allegations liberally.  Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (citing Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." Id.  However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'"  Id. (quoting Mala, 704 F.3d at 245).

### IV. DISCUSSION

#### A. Plaintiffs Do Not State A Claim For Relief Under §§ 1981, 1982, 1985, and 1986

Plaintiffs bring causes of action under 42 U.S.C. §§ 1981, 1982, 1985, and 1986.  §§ 1981, 1982, 1985, and 1986 are distinct but share a common essential thread—that a defendant must act with racial animus.  See Estate of Olivia ex rel. McHugh v. New Jersey, 604 F.3d 788, 797 (3d Cir. 2010) (noting that § 1981 requires plaintiff to plead (1) he belongs to a racial minority; (2) defendant's intent to discriminate based of race; and (3) discrimination concerning an enumerated activity); Brown v. Philip Morris, 250 F.3d 789, 797 (3d Cir. 2001) (noting that § 1982 requires

5

that plaintiff plead (1) defendant's racial animus; (2) intentional discrimination; and (3) that the defendant deprived plaintiff of his rights because of race); Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) (noting that § 1985(3) requires that plaintiff allege that the conspiracy was motivated by discriminatory animus and that the discrimination was invidious). Because Plaintiffs' Second Amended Complaint is devoid of well-plead allegations beyond mere conclusions that race motivated any Defendant's actions, Plaintiffs' §§ 1981, 1982, and 1985(3) claims must be dismissed.[5] Likewise, Plaintiffs' § 1986 claim must be dismissed because brought under § 1986 must be premised upon a valid § 1985 claim. See Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994).

### B. Plaintiffs' § 1983 Claims Must Be Dismissed

Plaintiffs argue that the Sheriff is liable under § 1983 because Mr. Davenport acted under the color of law and was occasioned by policy and custom to intentionally deprive Plaintiffs of their property. Second Am. Compl. ¶ 150, ECF 16. Plaintiffs allege that the policy or custom is to evict occupants from their homes and deprive them of property through collaboration with lock out and moving entities. Id. ¶¶ 151–152. Plaintiffs seem to advance two theories of liability for their § 1983 claim. First, Plaintiffs claim the municipal Defendants discriminated against them because of their race in violation of the Equal Protection Clause in the Fourteenth Amendment.

---

[5] When "it is clear that the plaintiff cannot prevail and that any amendment would be futile," a court may dismiss a cause of action. Bethea v. Nation of Islam, 248 F. App'x 331, 333 (3d Cir. 2007). Here, Plaintiffs have already amended their Complaint twice and substantively responded to the City of Philadelphia's Motion to Dismiss. At no time have Plaintiffs offered any well-pled allegations of racial animus motivating any Defendants, making it "crystal clear" that their allegations, "taken in the light most favorable to [the Frempongs], are patently meritless and beyond all hope of redemption." Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002). Although the non-municipal Defendants have not briefed the issue, this Court is assured that "[t]his is the rare case where," after fully appraising the facts, the "informed" decision to dismiss is "exercised with caution." Goodwin v. Castille, 465 F. App'x 157, 163 (3d Cir. 2012).

Second Am. Compl. ¶ 156, ECF 16.  Second, Plaintiffs argue that the Sheriff, through Davenport or through others acting at his direction, violated their Fourteenth Amendment due process rights by depriving Plaintiffs of their property.  Id. ¶¶ 155, 158.

For the reasons discussed supra regarding Plaintiffs' §§ 1981, 1982, 1985(3), and 1986 claims, Plaintiffs' § 1983 theory of racial discrimination is not viable.  See Kimber-Anderson v. City of Newark, 502 F. App'x. 210, 214 (3d Cir. 2012) (noting that race-based Equal Protection claim under § 1983 requires plaintiff to prove that individual acting under the color of state law intentionally discriminated against plaintiff).  Plaintiffs do not plausibly plead that race motivated any Defendant's actions.

Plaintiffs' theory that the actions of G.V. Homes, Granovsky, Morone, and C&N are attributable to Davenport because those individuals acted on his behalf and at his direction fails to establish § 1983 liability.  Second Am. Compl. ¶¶ 155, 158, ECF 16.  For the same reasons stated in the Court's memorandum dismissing Plaintiffs' First Amended Complaint, ECF 12 at 9–13, Plaintiffs' deprivation of property by G.V. Homes, Granovsky, Morone, and C&N was not state action.  The breach of the Agreement was not "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982), nor can Morone plausibly be considered to have been assisted by state actors, Jordan v. Fox, Rothschild, O'Brien, & Frankel, 20 F.3d 1250, 1266 (3d Cir. 1994).

Nor was Plaintiffs' deprivation of property caused Davenport because he did not participate in the breach of the Agreement.  While Davenport's actions can be properly attributed to the state, see Lugar, 457 U.S. at 937, Davenport did not "take an active role" in the property deprivation.  Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 609–10 (3d Cir. 2011).  Davenport did not (1)

7

accompany Morone, (2) tell Plaintiffs the seizure was legal, (3) order Plaintiffs to acquiesce or risk remand to custody, (4) intervene to help Morone, (5) stand in close proximity with Morone, or (6) recognize Morone had a right to the possession. Id. at 610. As such, Plaintiffs fail to tie the state, through Davenport, to Morone's action.

## V.  CONCLUSION

For the foregoing reasons, the Sheriff's Motion to Dismiss is **GRANTED.** Plaintiffs' Second Amended Complaint is **DISMISSED with prejudice** because amendment would be futile. See Gillman for Pomper v. AAA Mid-Atl. Ins. Grp., 2024 WL 3824861, at *5 (E.D. Pa. Aug. 14, 2024). The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims. An appropriate **ORDER** will follow.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-1064 Frempong v Sheriff of Phila\24-1064 Memo re Second Motion to Dismiss.docx